# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ARIC RYAN GROVE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. 3:18-cv-01270 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| METROPOLITAN GOVERNMENT | ) |
| OF NASHVILLE AND DAVIDSON | ) |
| COUNTY, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Pending before the Court is Defendant Metropolitan Government of Nashville and Davidson County's Motion to Dismiss (Doc. No. 9), supported by an accompanying brief (Doc. No. 10). Plaintiff Aric Grove filed a response (Doc. No. 16), and Defendant replied (Doc. No. 19). For the below-stated reasons, the Motion will be granted.

## ALLEGED FACTS

In December 2017, Plaintiff Aric Ryan Grove was incarcerated at the Hill Detention Center, a Metropolitan Government correctional facility. (Doc. No. 1 at ¶ 16). On December 27, 2017, Defendant Correctional Officer Touissant Hagewood ("Officer Hagewood") escorted Plaintiff to an I-Cell.[1] (*Id*.). While being escorted, Plaintiff informed Officer Hagewood that Plaintiff had left his water or drink at Officer Hagewood's work station. (*Id*. at ¶¶ 16-17). Officer Hagewood retrieved the water or drink and gave it to Plaintiff before placing Plaintiff in an I-Cell. (*Id*.). Thereafter, a verbal altercation between Plaintiff and Officer Hagewood occurred as Officer

---

[1] The Complaint does not define "I-Cell," but the Court understands this term to be a prison cell that houses a single inmate.

Hagewood closed the door to Plaintiff's I-Cell. (*Id*. at ¶ 18). Officer Hagewood shut the door to Plaintiff's I-Cell, paused for a few seconds, and then re-opened the door of the I-Cell. (*Id*. at ¶ 19). Officer Hagewood then entered the I-Cell and began to beat Plaintiff, aggressively striking Plaintiff with a closed fist approximately six or seven time. (*Id*. at ¶ 20). This resulted in Plaintiff's transfer to a local hospital to treat his injuries. (*Id*.).

On November 9, 2018, Plaintiff filed this lawsuit against Officer Hagewood in his individual and official capacity, as well as the Metropolitan Government of Nashville and Davidson County ("Metro"). (*See* Doc. No. 1). The Complaint alleges that Metro violated 42 U.S.C. § 1983 because it exhibited deliberate indifference to Plaintiff's rights in three ways: (1) its failure to train Officer Hagewood; (2) its failure to adopt, establish, or implement policies aimed at avoiding use of excessive force against unarmed and/or unthreatening inmates; and (3) its failure to properly supervise and discipline Officer Hagewood. (*Id*. at ¶¶ 37-39). The Complaint further alleges that Metro is liable for the following state law claims on a theory of *respondeat superior*: negligence; assault and battery; intentional infliction of emotional distress; negligent infliction of emotional distress; and outrageous conduct. (*Id*. at ¶ 14). Metro has filed a motion to dismiss all claims against it. (Doc. No. 9).

**LEGAL STANDARD**

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true as the Court has done above. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*. at 678; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. Identifying and setting aside such allegations is crucial, because they simply do not count toward the plaintiff's goal of showing plausibility of entitlement to relief. As suggested above, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id*. at 681. The question is whether the remaining allegations – factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

## ANALYSIS

In Metro's Motion to Dismiss, it argues that Plaintiff's 42 U.S.C. § 1983 claim should be dismissed because the Complaint does not plausibly allege municipal liability under Section 1983. Second, Metro argues that Plaintiff's state law claims fail because Metro has not waived its

immunity for any tort arising out of an alleged civil rights violation. (Doc. No. 9). The Court will explore both of Metro's arguments in turn.

I. **42 U.S.C. § 1983**

A Section 1983 claim exists for deprivation "of any rights, privileges, or immunities secured by the Constitution and laws," as a result "of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. A municipality can be liable under Section 1983 only if the plaintiff establishes that: "(1) the plaintiff's harm was caused by a constitutional violation; and (2) the [municipality] was responsible for that violation." *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009). Municipalities "may not be sued under § 1983 for an injury inflicted solely by its employees or agents" on a theory of *respondeat superior* liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

"The upshot is that municipalities can be held liable for harms caused by[:]" (1) "direct actions of the municipalities themselves[;]" (2) "harms caused by the implementation of municipal policies or customs[;]" (3) "and harms caused by employees for whom the municipality has failed to provide adequate training [or supervision]." *Morgan v. Fairfield Cnty. Ohio*, 903 F.3d 553, 565 (6th Cir. 2018) (internal citations omitted); *see also Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). Notably, "allegations concerning the *failure* to implement a policy is cognizable under *Monell* as a 'failure to train' theory." *Liggins v. Baca*, No. CV 12-10982-CJC, 2016 WL 10650807, at *3 (C.D. Cal. Jan. 13, 2016) (emphasis added); *see also Modd v. Cnty. of Ottawa*, No. 1:10-CV-337, 2012 WL 5398797, at *16 (W.D. Mich. Aug. 24, 2012) ("Section 1983 claims against municipalities based on a failure to train, the lack of a policy, or other inaction are all governed by the same standards, as established by the Supreme Court in *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989)).

Plaintiff alleges that Metro violated Section 1983 in three ways: (1) its failure to train Officer Hagewood; (2) its failure to adopt, establish, or implement policies aimed at avoiding use of excessive force against unarmed and/or unthreatening inmates; and (3) its failure to properly supervise and discipline Officer Hagewood. (Doc. No. 1 at ¶¶ 37-39). Thus, each of Plaintiff's three alleged bases for Metro's liability fall into the third of the above-identified categories of harms for which a municipality may be held liable, *i.e.,* failure to train. In other words, Plaintiff's claims of failure to train, failure to implement policies, and failure to supervise all are variants of the failure-to-train category of claims. Each of the three variants will be discussed in sequence in the following paragraphs.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985)). To state a Section 1983 claim based on a failure to train, a plaintiff must plead facts sufficient to plausibly show that:

> (1) the training [] was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. We have further elaborated that, "[t]o show deliberate indifference, Plaintiff[s] must show prior instances of unconstitutional conduct demonstrating that the [city] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury."

*Marcilis v. Twp. of Redford*, 693 F.3d 589, 605 (6th Cir. 2012) (quoting *Plinton v. Cnty. of Summit*, 450 F.3d 459, 464 (6th Cir. 2008)).

For a municipality to be liable under Section 1983 based on harm resulting from the failure to implement a municipal policy, the lack of a policy must amount to deliberate indifference to the injured party. *See Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 900 (6th Cir. 2004). Where a complaint "is devoid of any allegations identifying the allegedly deficient policy, how existing

policies and procedures are inadequate . . . or [defendant's] awareness of the deficiency in existing policy and the risk it posed[,]" the complaint fails to state a viable claim. *Dishman v. Correct Care Solutions, LLC*, No. 17-CV-98-HRW, 2018 WL 3097319, at *5 (E.D. Ky. June 22, 2018) (citing *Twombly*, 550 U.S. at 555).

To properly plead a failure-to-supervise claim, the plaintiff must allege facts that demonstrate:

> "(1) the existence of a clear and persistent pattern of abuse governmental employees; (2) notice or constructive notice on the part of the defendant; (3) the defendant's tacit approval of unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction; and (4) the defendant's custom was the 'moving force' or direct causal link in the constitutional deprivation."

*Mize v. Tedford*, 375 F. App'x 497, 500 (6th Cir. 2010) (internal quotation marks and citations omitted).

As discussed above, each of the three variants of the failure-to-train theory of Section 1983 liability requires that the defendant municipality acted with deliberate indifference. *See Escamilla v. Webb Cnty., Tex.*, No. 5:11-CV-13, 2015 WL 3771085, at *6 (S.D. Tex. June 17, 2015) ("For a [municipality] to be liable for failing to act affirmatively, such as a failure to train or supervise, or a failure to implement a policy, a plaintiff must show that the [municipality] was deliberately indifferent to the fact that its failure to act would likely cause violations of particular constitutional rights.") (citation omitted); *Cerbelli v. City of New York*, 600 F. Supp. 2d 405, 412 (E.D.N.Y. 2009) ("To the extent plaintiff's *Monell* claim is based on [a municipality's] alleged failure to train or supervise employees, or its failure to implement a policy or program responding to a problem adequately, plaintiff must show that the alleged failure "amounts to deliberate indifference to the rights of persons with whom the [municipal employees] come into contact." (citing *City of Canton*, 489 U.S. at 388)). The Sixth Circuit has identified two ways to demonstrate a municipality's

deliberate indifference under a failure to affirmatively act (*i.e.*, train, supervise, or implement a policy) theory. First, Plaintiff may "show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training [supervision, or existing policies] in this particular area was deficient and likely to cause injury." *Plinton*, 540 F.3d at 464 (citing *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)); *see also Breaud v. Breaud*, No. 1:15-CV-00053, 2016 WL 10650417, at *17 (M.D. Tenn. Dec. 19, 2016) ("To succeed on her claim that Centerville's policies are deficient, Plaintiff must show 'actual knowledge indicating a deficiency with the existing policy . . . (or the lack thereof), such as where there have been recurring constitutional violations.'" (quoting *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012))). In the alternative, a single incident may demonstrate deliberate indifference where there is "a complete failure to train [or supervise] the police force, training [or supervision] that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result," *Harvey v. Campbell Cnty., Tenn.*, 453 F. App'x 557, 567 (6th Cir. 2011) (citing *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982)), or where a violation of a federal right is a "highly predictable consequence" of a municipality's lack of a policy. *Breaud*, 2016 WL 10650147, at *17 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997); *City of Canton*, 489 U.S. at 390.

The specific allegations in the Complaint regarding Metro's liability are as follows:

- "Defendant Metro is sued under 42 U.S.C. § 1983 for their [sic] failure to provide adequate training, instruction, and supervision in light of serious and harmful foreseeable consequences that could result due to a lack of proper instruction, training, and supervision of its law enforcement officers." (Doc. No. 1 at ¶ 6).

- "This series of events clearly evidence a premeditation and a complete lack of training and control by [Officer] Hagewood." (*Id*. ¶ 24 (after describing Officer Hagewood's alleged assault on Plaintiff)).

- "Plaintiff has suffered embarrassment, mental anguish, humiliation, emotional distress, and physical harm, pain, and suffering as a result of Defendant Metro's failure to properly and/or adequately train [Officer] Hagewood." (*Id*. ¶ 28).

- "Upon information and belief, Defendant Metro is liable for deliberate indifference for its failure to train. The lack of training was the affirmative link or motivating force behind the conduct of [Officer] Hagewood which resulted in injuries to the Plaintiff." (*Id*. ¶ 37).

- "Defendant Metro is deliberately indifferent because it has failed to adopt, establish, or implement policies aimed at avoiding use of excessive of [sic] force against unarmed and/or unthreatening inmates. Defendant Metro's failure to adopt, establish, or implement policies aimed at avoiding the use of excessive force against unarmed citizens is a direct and proximate cause of the injuries caused by [Officer] Hagewood to Plaintiff." (*Id*. ¶ 38).

- "Defendant Metro is liable for deliberant [sic] indifference because it failed to properly supervise and discipline [Officer] Hagewood. The failure to properly supervise and discipline [Officer] Hagewood is a direct and proximate cause of the injuries caused by [Officer] Hagewood to the Plaintiff." (*Id*. ¶ 39).

- "Upon information and belief, Defendant Metro and/or a Metro/Davidson County SD officer with final decision-making authority remained deliberately indifferent to the unconstitutional characteristics of the above customs, policies, practices, or procedures." (*Id*. ¶ 40).

- "The above customs, practices, or procedures caused the violation of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution." (*Id*. ¶ 41).

The bulk of Plaintiff's allegations are no more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which do not meet the pleading standard articulated in *Iqbal*. 556 U.S. at 678. The Sixth Circuit has recently reiterated, in the context of a Section 1983 case, that the pleading standard is "relatively strict." *Gavitt v. Born*, 835 F.3d 623, 647 (6th Cir. 2016) (quoting *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011)). Under this standard, the plaintiff's "obligation to provide the 'grounds' for the

8

claimed entitlement to relief 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 640 (quoting *Twombly*, 550 U.S. at 555); *see also Mahoon v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:16-cv-01751, 2016 WL 6250379, at *7 (M.D. Tenn. Oct. 26, 2016) ("[C]ourts within the Sixth Circuit have in light of *Iqbal*, viewed with disfavor complaints that have employed mere boilerplate language asserting a generalized 'failure to train.'" (collecting cases)).

Plaintiff has failed to plead sufficient factual details, or any factual details, describing Metro's training, policies, procedures, practices, or customs relating to training; he has not identified any particular shortcomings in that training or how those shortcomings cause the alleged violation of Plaintiff's rights; and he has not identified any other previous instances of excessive force or similar violations that would have put Metro on notice of a problem that would make such claims "plausible" and inform a finding of deliberate indifference. *Id.*; s*ee also Savoie v. Martin*, 673 F.3d 488, 495 (6th Cir. 2012) ("To establish deliberate indifference, the plaintiff must show prior instances of unconstitutional conduct demonstrating that the [employer] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." (citing *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010))). Plaintiff's failure-to-supervise claim fares no better as Plaintiff alleges no facts, beyond conclusory assertions, of Metro's deliberate indifference. He does not allege, for example, that there has been a pattern of constitutional violations by Metro's officers, that any such violations have gone undisciplined, or that there are circumstances indicating that Metro was aware that these officers were prone to constitutional violations. *See Amerson v. Waterford Tp.*, 562 F. App'x 484, 492 (6th Cir. 2014). As to Plaintiff's lack-of-policy claim, the Complaint is devoid of any allegations identifying Metro's awareness of "a deficiency with the existing policy," which is required to plead

Metro's deliberate indifference. *Heyerman*, 680 F.3d at 648. Thus, this claim fails as well. *See Dishman*, 2018 WL 3097319, at *5 (citing *Twombly*, 550 U.S. at 555).

Moreover, although a single incident may exhibit deliberate indifference in "rare" circumstances, here there are no allegations sufficient to show such deliberate indifference based on a single incident. Plaintiff has not alleged Metro's training or supervision was "so reckless or grossly negligent that future . . . misconduct is almost inevitable or would properly be characterized as substantially certain to result," *Harvey*, 453 F. App'x at 562-63, nor has he alleged that the incident was a "highly predictable consequence" of a municipality's lack of a policy. *Breaud*, 2016 WL 10650147, at *17 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 409 (1997)). This Court, and others within this Circuit, consistently have dismissed such bare-bones assertions of municipal liability. *See Laporte v. City of Nashville*, No. 3:18-CV-00282, 2019 WL 845413, at *9 (M.D. Tenn. Feb. 21, 2019) (Richardson, J.); *Minick v. Metro. Gov't of Nashville*, No. 3:12-cv-0524, 2014 WL 3817116, at *2 (M.D. Tenn. Aug. 4, 2014) (Trauger, J.); *Sollenberger v. Sollenberger*, 173 F. Supp. 3d 608, 626-27 (S.D. Ohio 2016); *Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931, 943-44 (M.D. Tenn. 2012) (Sharp, J.); *Birgs v. City of Memphis*, 686 F. Supp. 2d 776, 780 (W.D. Tenn. 2010); *Hutchinson v. Metro. Gov't of Nashville*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010) (Nixon, J.) (dismissing the plaintiff's 1983 claim where "beyond the assertion that Defendant Metropolitan Government failed to adequately train its officers . . . [the p]laintiff gives no additional factual support.").

Plaintiff's arguments proffered in an attempt to avoid dismissal are to no avail. Plaintiff argues that a municipality may be held liable when: (1) a municipality fails to act and the "'inadequacy [of the training is] so likely to result in the violation of constitutional rights, that the policymaker . . . can reasonably be said to have been deliberately indifferent to the [plaintiff's

rights]" (Doc. No. 16 at 7 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)); and (2) "if there was a ratification by a municipality of its employee's unconstitutional acts by failing to meaningfully investigate and punish allegations of unconstitutional conduct" (*id.* (citing *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1247 (6th Cir. 1989)). Although Plaintiff does accurately state these general principles of law, he fails to plead factual matter sufficient to render them allegedly applicable in this case. Plaintiff's Complaint as alleged contains no factual allegations to support liability under either of Plaintiff's purported arguments, and in fact, does not include a failure-to-investigate claim at all. (Doc. No. 19 at 2). Accordingly, the Court rejects Plaintiff's argument.[2]

Therefore, the Court finds that the allegations in the Complaint simply do not meet the pleading standard set out in *Twombly* and *Iqbal*. Consequently, Plaintiff's Section 1983 against Metro (Count II) will be dismissed.

## II. State Law Claims

The only remaining claim that is specifically directed toward Metro is a claim of negligence (Count IV). The other state law claims are based on the actions of Defendant Hagewood and Plaintiff alleges Metro is liable through a theory of *respondeat superior*. Metro argues that these claims are barred because it has not waived its immunity under the Tennessee Government Tort Liability Act ("TGTLA").[3]

The TGTLA codifies Tennessee's common law rules concerning sovereign immunity. *See Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 79 (Tenn. 2001). Unless the TGTLA specifies

---

[2] Further, the Court rejects Plaintiff's argument that Metro's request for dismissal is premature because its arguments are more appropriate for summary judgment. (Doc. No. 16 at 8). As Metro aptly points out, the Supreme Court made clear in *Twombly* and *Iqbal* that a complaint must allege "enough facts to state a claim to relief that is plausible on its face" to withstand a Fed. R. Civ. P. 12(b)(6) motion to dismiss, *Twombly*, 550 U.S. at 570, and "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice" *Iqbal*, 556 U.S. at 678.

[3] Plaintiff's argument in response to Metro's assertion misses the mark. In response, Plaintiff asserts that this Court may properly exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over his state law claims. (Doc. No. 16 at 8-10). But he offers no on-point response to Metro's arguments pertaining to the TGTLA.

otherwise, it provides blanket immunity for all governmental entities in suits for injuries resulting from the exercise of governmental duties. Tenn. Code Ann. § 29-20-201(a); *Johnson v. City of Memphis*, 617 F.3d 864, 872 (6th Cir. 2010). The TGTLA contains specific provisions that waive sovereign immunity for identified types of claims, including claims where the plaintiff's injury is proximately caused by a "negligent acts or omissions" of any governmental employee acting within the scope of his or her employment. Tenn. Code Ann. § 29–20–205.

"But an exception (to the exception [to sovereign immunity]) is provided for injuries arising out of 'civil rights.' In those cases the individual employee may be held liable, while the government retains its general shield of immunity. *Adams as Next Friend of K. E. v. Blount Cnty., Tenn.*, No. 3:17-CV-313, 2019 WL 1233750, at *23 (E.D. Tenn. Mar. 15, 2019) (citing Tenn. Code Ann. § 29–20–205(2)); *see also Howard v. Knox Cnty., Tenn.*, No. 3:15-cv-6-TTAV-CCS, 2016 WL 9455169, at *11 (E.D. Tenn. Sept. 7, 2016) ("[I]t is fair and reasonable to interpret the plain language of the TGTLA as meaning that civil rights claims—claims that arise under the federal civil rights law, 42 U.S.C. § 1983, and the United States Constitution—are a type of intentional tort for which counties retain absolute sovereign immunity.") (citation omitted). Numerous Tennessee courts and federal courts agree that the "civil rights" exception preserves the state's immunity against claims arising under the United States Constitution and Section 1983. *See Cochran v. Town of Jonesborough*, No. E201801512COAR3CV, 2019 WL 1399514, at *8 (Tenn. Ct. App. Mar. 27, 2019); *Cole v. Robertson Cnty., Tenn.*, No. 3:18-cv-0497, 2018 WL 3328075, at *3 (M.D. Tenn. July 6, 2018); *Warren v. Metro. Gov't of Nashville*, No. 3:14-cv-2373, 2015 WL 3417844, at *8 (M.D. Tenn. May 27, 2015); *Lundy v. Knox Cnty. Tenn.*, No. 3:13-cv-588-TAV-HBG, 2014 WL 1491234, at *4 (E.D. Tenn. Apr. 15, 2014); *Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 852 (E.D. Tenn. 2011).

The TGTLA also waives immunity for intentional torts that are "*not specifically enumerated in the intentional tort exception*[.]" *Limbaugh*, 59 S.W.3d at 81.[4] But this waiver is limited. "Tennessee courts have held the TGTLA allows a plaintiff to hold a municipal entity vicariously liable for intentional torts [of the municipal entity's agent or employee] not enumerated in Tenn. Code Ann. § 29–20–205(2) . . . only when the plaintiff shows negligence on the entity's part in allowing the intentional tort to occur." *Harrison v. City of Dickson*, No. 3:11-cv-1044, 2013 WL 11482950, at *15 (M.D. Tenn. Apr. 11, 2013) (citing *Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 368–69 (Tenn. 2011)).

### A. Count III, IV, and VIII

Plaintiff asserts a negligence claim based on a theory of *respondeat superior* (Count III), a direct negligence claim (Count IV), and a negligent infliction of emotional distress claim based on a theory of *respondeat superior* (Count VIII) against Metro. The circumstances giving rise to these claims are the same alleged wrongful act (*i.e.*, Officer Hagewood's use of excessive force) that gives rise to Plaintiff's Section 1983 claim. Therefore, Metro retains its immunity because of the TGTLA's preservation of municipal immunity for injuries arising from civil rights. *See Johnson*, 617 F.3d at 871 (finding civil rights exception applied when the plaintiff's claim regarding the defendant's negligence arose out of the same circumstances giving rise to her civil rights claim under Section 1983); *Doe #1 v. Cravens*, No. 2:17-cv-00049, 2018 WL 1522401, at *6 (M.D. Tenn. Mar. 28, 2018) (Crenshaw, J.) ("[E]ven though the Tennessee Supreme Court has held that a governmental entity does not retain immunity for negligent infliction of emotional distress under the TGTLA, *Sallee v. Barrett*, 171 S.W.3d 822, 828-29 (Tenn. 2005), that holding does not apply

---

[4] By "*intentional tort exception*," *Limbaugh* was referring to exception, set forth in Tenn. Code Ann. § 29-20-205(2), to the general waiver of sovereign immunity set forth in Tenn. Code Ann. § 29-20-205. *See Limbaugh, 59* S.W.3d at 79. Thus, sovereign immunity is (subject to the limitations discussed herein) not waived for intentional torts not among those specifically excepted from the waiver of sovereign immunity.

13

where the injury arises out of a civil rights violation, *Jackson v. Thomas*, No. M2010-01242-COA-R3CV, 2011 WL 1049804, at *7 (Tenn. Ct. App. Mar. 23, 2011)."); *Rowland v. City of Memphis*, No. 2:13-cv-02040-JPM, 2013 WL 2147457, at *11 (W.D. Tenn. May 15, 2013) (dismissing a negligence claim against a city based on *respondeat superior* because the claim "ar[ose] from the same circumstances as Plaintiff's [Section] 1983 claim"). Therefore, Counts III, IV, and VIII against Metro will be dismissed.

### B. Count VII

Metro argues that Plaintiff's intentional infliction of emotional distress claim (Count VII) falls within the enumerated exceptions to the waiver of immunity listed in Tenn. Code Ann. § 29-20-205(2). (Doc. No. 10 at 7). In response, Plaintiff does not argue otherwise. "[T]he Tennessee Supreme Court has held that the TGTLA's preservation of governmental immunity for claims arising from the 'infliction of emotional distress,' Tenn. Code Ann. § 29-20-205(2), means that municipalities are immune from suits arising from the intentional infliction of emotional distress caused by government employees." *Adams v. Diamond*, No. 3:18-CV-00976, 2019 WL 314569, at *4 (M.D. Tenn. Jan. 24, 2019) (Trauger, J.) (citing *Sallee*, 171 S.W.3d at 829). Therefore, although Officer Hagewood is not immune from suit, Metro is, and Count VII against Metro will be dismissed.

### C. Counts V and VI

Plaintiff's remaining state law claims against Metro are for assault and battery (Count V) and outrageous conduct (Count VI). Each is based on a theory of *respondeat superior*.

The TGTLA shields a municipality from vicarious liability for a defendant employee's alleged intentional torts. *See Partee v. City of Memphis, Tenn.*, 449 F. App'x 444, 447 (6th Cir. 2011) ("There is no cause of action set forth in the [T]GTLA to hold the City directly liable for

[the officer's] alleged intentional conduct during [the plaintiff's] arrest."). But a municipality can be held liable based on an intentional tort (if not of a type listed among the exceptions set forth in Tenn. Code Ann. § 29-20-205(2)) of its employee under a theory other than vicarious liability. Specifically, a municipality will not be immune from liability if the plaintiff makes a "direct showing of negligence on the part of the governmental entity" that caused or enabled the intentional tort. *Hughes v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 340 S.W.3d 352, 368 (Tenn. 2011)); *see also Partee*, 449 F. App'x at 447 ("On the other hand, the negligent act of any city employee who hired, supervised, or disciplined [the officer] can be attributed to the City and serve as a permissible basis under the GTLA for liability against the City.").

Here, in Count V and VI, Plaintiff alleges that Metro is "vicariously liable for damages and injuries" to Plaintiff but does not allege that Metro's negligence led to the intentional torts. Nor does he allege any negligent acts committed by, or negligent conduct attributable to, Metro in connection with Count V or Count VI. (Doc. No. 1 at ¶¶ 60, 62). Numerous courts have held that similar allegations are insufficient to effect waiver of immunity. *See Adams*, 2019 WL 314569, at *4 (dismissing an assault and battery claim that did not allege "negligence on the part of Metro Nashville"); *Grace v. City of Ripley, Tenn.*, No. 216CV02395JPMDKV, 2017 WL 835206, at *10 (W.D. Tenn. Mar. 2, 2017) (dismissing an assault and battery claim against a city where the plaintiff failed to identify any negligent act by the city); *Joslin v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:12-CV-1284, 2013 WL 2250712, at *5 (M.D. Tenn. May 21, 2013) (dismissing an assault and battery claim against Metro where "Count Four [did] not allege that Metro Nashville's negligence led to the alleged assault and battery by the defendants"); *Rowland*, 2013 WL 2147457, at *9 (dismissing a state law claim against a city and noting that "[g]overnmental immunity pursuant to the TGTLA is jurisdictional . . . . As a result, removal of

immunity must be pled in [] the [] Complaint"); *Pendleton v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2004–01910–COA–R3–CV, 2005 WL 2138240, at *3 (Tenn. Ct. App. Sept. 1, 2005) ("Since 2001, the Court of Appeals has correctly interpreted *Limbaugh* to mean that "the GTLA does not allow plaintiffs to hold governmental entities vicariously liable for intentional torts not exempted under section 29–20–205(2), but rather requires a direct showing [of] negligence on the part of the governmental entity.").

Additionally, Counts V and VI fail because these claims are based on the same allegations as Plaintiff's Section 1983 claim. Other Courts have dismissed intentional tort claims against a governmental entity as barred by the civil rights exception to the TGTLA when the intentional tort claims arise from the same underlying circumstances as an underlying civil rights claim. *See Branum v. Loudon Cnty., Tenn.*, No. 3:11-cv-351-TAV, 2014 WL 640634, at * 11-12 (E.D. Tenn. Feb. 19, 2014) (dismissing an assault and battery claim against a county where the assault and battery was alleged to have been committed solely in the context of a civil rights violation by a city employee); *Bryant v. McCoig*, No. 3:15-CV-475, 2018 WL 3892427, at *10 (E.D. Tenn. Aug. 14, 2018) ("[The plaintiff's] assault and battery claim (which remains viable against [the defendant officer]) clearly arises out of the same circumstances giving rise to his [Section] 1983 claims. As such, this state-law claim falls under the civil-rights exception to the TGTLA, and the County retains its immunity."); *Rowland*, 2013 WL 2147457 at *9 (dismissing the plaintiff's conversion claim against a city based on a theory of *respondeat superior* because the conversion claim arose

out of the same facts as the plaintiff's Section 1983 claim).[5] Consequently, Plaintiff's remaining state law claims (Counts V and VI) will be dismissed.[6]

## CONCLUSION

For the foregoing reasons, Metro's Motion to Dismiss (Doc. No. 9) will be **GRANTED**. The claims against Metro will be **DISMISSED**.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[5] The above-mentioned bases for dismissal of Counts V and VI also operate as additional reasons for dismissal of Count VII (intentional infliction of emotional distress).

[6] It matters not that Plaintiff's underlying Section 1983 claim against Metro will be dismissed. As explained by the Tennessee Court of Appeals in *Cochran*, there is no indication "that [Tenn. Code Ann. §] 29-20-205(2) requires the claimant to be successful in his or her civil rights claim in order for the civil rights exception to apply to corresponding state law claims." *Cochran*, 2019 WL 1399514, at *8. The question is whether the same circumstances give rise to both the negligence claim and *a* civil rights claim, not whether the same circumstances give rise to both the negligence claim and a *viable* civil rights claim